## CHERNOW et. al. v. COHN & ROSENBERGER, Inc.
## SAME v. STUPELL.

District Court, S. D. New York.

Feb. 5, 1934.

Dean, Fairbank, Hirsch & Foster and Morris Hirsch, all of New York City, for plaintiffs.

Pennie, Davis, Marvin & Edmonds, W. B. Morton and E. H. Merchant, all of New York City, for defendant.

HENRY W. GODDARD, District Judge.

In these two motions to dismiss counterclaims, the facts and the pleadings are alike, and the questions raised are identical so that both of them will be disposed of in this one memorandum.

The bills of complaint allege infringement by the defendant of letters patent No. 1,932,304. The precise act complained of is the selling by the defendant of certain de-

vices generally referred to as "gum back initials." Each defendant, in its answer, denies infringement and sets up a counterclaim in which it prays for an injunction to restrain the plaintiffs from maliciously and falsely circulating statements among the defendant's customers and the trade generally that the defendant in selling said devices is infringing the plaintiffs' patent, and asks for damages sustained by the defendant as a result of the plaintiffs' interference with defendant's sales. All the parties to the suits are citizens of the state of New York.

Plaintiffs move to dismiss the counterclaim on two grounds: (1) That Equity Rule 30 (28 USCA § 723) does not permit a counterclaim of this nature; (2) that the counterclaim on its face fails to set forth a valid cause of action in equity.

■■ Concededly there is no diversity of citizenship and consequently this court has no jurisdiction of the counterclaim unless it arises out of the transaction which is the subject-matter of the suit. The last paragraph of rule 30 which is the pertinent part, reads as follows:

"The answer must state in short and simple form any counterclaim arising out of the transaction which is the subject-matter of the suit, and may, without cross-bill, set up any set-off or counterclaim against the plaintiff which might be the subject of an independent suit in equity against him, and such set-off or counterclaim, so set up, shall have the same effect as a cross-suit, so as to enable the court to pronounce a final decree in the same suit on both the original and the cross-claims."

So that the principal question presented by these motions is whether the counterclaim sought to be stricken out arises out of the "transaction" which is the subject-matter of the suit within the meaning of rule 30. Under rule 30, two classes of counterclaims are provided for. (a) One "arising out of the transaction which is the subject-matter of the suit" which must be pleaded; and (b) another "which might be the subject of an independent suit in equity," and which may be brought forward at the option of the defendant. Moore v. New York Cotton Exchange, 270 U. S. 593, 46 S. Ct. 367, 70 L. Ed. 750, 45 A. L. R. 1370.

■■ The acts complained of in the bill are the sales made by the defendant of certain articles or devices in alleged violation of plaintiffs' patent. The defendant, in its answer, denies patent infringement and asserts the right to sell them. The plaintiffs seek to stop the defendant from making the sales. The defendant in its counterclaim seeks to prevent the plaintiffs from interfering with its making such sales; it asks for affirmative relief fully protecting its right in respect to them. The "transaction" which gives rise to this litigation both in the bill and the counterclaim is the sale by the defendant of these "gum back initials." As I view it, the defendant's counterclaim is a "counterclaim arising out of the transaction which is the subject-matter of the suit."

In Moore v. New York Cotton Exchange, supra, a bill in equity was brought to obtain a mandatory injunction compelling the defendant to deliver market quotations to plaintiff. In its answer in addition to its defense, the defendant sets up a counterclaim under rule 30 asking for an injunction restraining the plaintiff from wrongfully obtaining its quotations. Mr. Justice Sutherland said at page 610 of 270 U. S., 46 S. Ct. 367, 371:

"The refusal to furnish the quotations is one of the links in the chain which constitutes the transaction upon which appellant here bases its cause of action. It is an important part of the transaction constituting the subject-matter of the counterclaim. It is the one circumstance without which neither party would have found it necessary to seek relief. Essential facts alleged by appellant enter into and constitute in part the cause of action set forth in the counterclaim. That they are not precisely identical, or that the counterclaim embraces additional allegations, as, for example, that appellant is unlawfully getting the quotations, does not matter. To hold otherwise would be to rob this branch of the rule of all serviceable meaning, since the facts relied upon by the plaintiff rarely, if ever, are, in all particulars, the same as those constituting the defendant's counterclaim. * * *

"So close is the connection between the case sought to be stated in the bill and that set up in the counterclaim, that it only needs the failure of the former to establish a foundation for the latter; but the relief afforded by the dismissal of the bill is not complete without an injunction restraining appellant from continuing to obtain by stealthy appropriation what the court had held it could not have by judicial compulsion."

So in the case at bar the sale by the defendant of the "gum back initials" is "the

one circumstance without which neither party would have found it necessary to seek relief." And the failure of the plaintiffs to make out a case against defendant establishes a foundation for the counterclaim. And it is also true that although it may be decreed that defendant has the right to sell its product, it may well be that it needs and is entitled to the aid of the court in restraining plaintiffs from circulating improper statements tending to interfere with such sales.

I am fully aware that there are several cases holding to the contrary on the question now under consideration, but these cases seem to rely largely upon dicta in cases decided before rule 30 was construed by the Supreme Court in Moore v. New York Cotton Exchange, supra. My conclusion is in accord with that of Judge Coleman in his as yet unreported opinion in the case of General Electric Company and Carboloy Company, Inc., v. Fansteel Products Co., Inc., Equity No. 60—202, dated November 16, 1931, in which it seems to me good reasons for such a conclusion are set forth. Further support for this view is found in Naivette, Inc., v. Philad Co. et al. (C. C. A.) 54 F. (2d) 624. The Supreme Court in Moore v. New York Cotton Exchange, supra, allows a liberal interpretation of rule 30 which I think is highly desirable as it tends to avoid a multiplicity of suits. In American Mills Co. v. American Surety Company, 260 U. S. 360, page 365, 43 S. Ct. 149, 151, 67 L. Ed. 306, Mr. Chief Justice Taft says (referring to rule 30):

"The rule should be liberally construed to carry out its evident purpose of shortening litigation, but the limitation of counterclaims to those which are equitable is imperative."

Ingrassia v. A. C. W. Mfg. Corp. (C. C. A.) 24 F.(2d) 703, cited by plaintiffs relates to quite a different situation. That case holds that in an original bill a charge of unfair competition may not be joined to one of infringement in the absence of diversity of citizenship. But the jurisdiction of the subject-matter of a counterclaim is governed by rule 30. The jurisdiction of a counterclaim is on a different basis from a charge of unfair competition joined in an original bill in a patent suit.

The second ground urged by the plaintiffs for dismissing the counterclaim, namely, that it does not set forth a good cause of action in equity, is without merit. Emack v. Kane (C. C.) 34 F. 46; Naivette, Inc., v. Philad Co. et al. (C. C. A.) 54 F.(2d) 624; A. B. Farquhar Co., Ltd., v. National Harrow Co. (C. C. A.) 102 F. 714, 49 L. R. A. 755.

The motions to dismiss the counterclaim are denied.