The **KISSELL COMPANY**, Plaintiff-Appellee,

v.

**Emmanuel R. FARLEY and Alta Nell Farley, Cross-Defendants-Appellees,**

v.

**James P. FARLEY, Defendant-Cross-Plaintiff-Appellant.**

**No. 17217.**

United States Court of Appeals Seventh Circuit.

Nov. 7, 1969.

Rehearing Denied Dec. 10, 1969.

Stephen B. Cohen, George C. Pontikes, Chicago, Ill., John R. Hammond, Indianapolis, Ind., for appellant.

James W. Beatty, Sidney Mishkin, Murray J. Feiwell, Indianapolis, Ind., for appellees.

Before DUFFY, Senior Circuit Judge, and SWYGERT and CUMMINGS, Circuit Judges.

SWYGERT, Circuit Judge.

Defendant, James P. Farley, appeals from that part of a judgment entered by the district court dismissing with prejudice his counterclaim against the plaintiff, The Kissell Company. He also appeals from that part of the judgment which found for Alta Nell Farley in her individual and representative capacities, on his cross-complaint alleging damages for malicious interference with his contractual rights.

This is a diversity action which was brought by The Kissell Company in January 1966 in two counts for foreclosure of a real estate mortgage and for specific performance of an agreement by Emmanuel R. and Alta Nell Farley (hereinafter Emmanuel and Alta Nell) to execute second mortgages on other parcels of real estate. Count I of the complaint alleged that pursuant to a construction loan agreement dated April 17, 1965, Kissell agreed to lend Emmanuel and Alta Nell $1,950,000 for the construction of an apartment project in Indianapolis; that on July 23, 1965 Emmanuel and Alta Nell executed a note and mortgage on property known as "Pine Grove Real Estate" to secure the loan; and that Emmanuel and Alta Nell defaulted in their payments on the loan. Count II sought specific performance by Emmanuel and Alta Nell of an agreement by them to give Kissell second mortgages on other parcels of real estate in consideration for Kissell's agreement to relieve them of their obligation to furnish Kissell a performance bond on the construction project.

James P. Farley (hereinafter James), a nephew of Emmanuel, was joined as a defendant in Kissell's complaint. James had previously asserted an interest in the property by filing an action against Emmanuel and Alta Nell in the Superior Court of Marion County, Indiana on August 19, 1965 for specific performance of an agreement which allegedly gave him a right to purchase the Pine Grove Real Estate.

Emmanuel and Alta Nell filed a denial to the allegations of Kissell's complaint and also filed a cross-claim against James alleging his state court action for specific performance slandered their title to the Pine Grove Real Estate. James failed to file a timely response to either Kissell's complaint or Emmanuel and Alta Nell's cross-claim. On September 8, 1967 the district court granted summary judgment in favor of Kissell on its foreclosure action and awarded a deficiency judgment to Kissell against Emmanuel and Alta Nell in excess of $98,000.

On August 17, 1967 James sought leave to cure his default by filing answers to Kissell's complaint and to Emmanuel and Alta Nell's cross-claim and to file a counterclaim against Kissell and a cross-claim against Alta Nell individually and as representative of Emmanuel's estate.[1] The trial court initially denied this request but subsequently on September 15, 1967 granted leave to James to file his counterclaim and cross-claim. The court refused, however, to reopen the summary judgment entered in favor of Kissell on its foreclosure action.

---

1. While this matter was pending in the trial court, Emmanuel R. Farley died and was replaced as a party to the lawsuit by his wife acting as administratrix of his estate.

In his counterclaim and cross-complaint James alleged that the Merchants National Bank & Trust Company entered into an "option" contract on November 12, 1964 with Emmanuel and Alta Nell to purchase the Pine Grove Real Estate; that on August 18, 1965 Merchants National Bank assigned its rights under the contract to James; that Emmanuel and Alta Nell refused to abide by the terms of the agreement; and that Kissell, Emmanuel and Alta Nell entered into negotiations and executed documents with the purpose of denying him his rights under the alleged agreement with Emmanuel and Alta Nell.

Trial was set on the counterclaim and cross-claims for December 4, 1967. Shortly before trial James moved to dismiss without prejudice his counterclaim against Kissell and his cross-claim against Emmanuel and Alta Nell. James argued that he preferred to litigate these claims in an Illinois state court action brought against him for commissions by a broker who had allegedly obtained a commitment for financing construction on the Pine Grove Real Estate. In the Illinois action, James had filed a third party complaint against Kissell and he maintained that the Illinois long-arm statute would permit him to obtain jurisdiction over Alta Nell in both her individual and representative capacities. The court held that James' counterclaim against Kissell was compulsory and when James elected to stand on his motion for voluntary dismissal, the court dismissed the counterclaim with prejudice.

Alta Nell failed to respond to James' cross-claim and on December 5, 1967 Jame requested that a default judgment be entered against Alta Nell in her individual and representative capacities. This motion was denied and cross-defendants were allowed to enter an oral denial to James' cross-claim. James elected to proceed on the cross-claim and on August 15, 1968 the court entered judgment against James on his cross-claim and for James on Alta Nell's cross-claim alleging slander of title. In holding against James on his cross-claim, the court found that there had been no contract between Emmanul and Alta Nell and James; that the agreement to purchase entered into by Merchants National Bank and Trust Company as trustee of a trust under which James was chief beneficiary was invalid since no officer of the bank had signed the document; that James was not the real party in interest to the agreement; and that James was not prepared to perform the agreement and, as a consequence, his failure to act indicated a desire to rescind the agreement.

I

We hold that the district court was correct in ruling James' counterclaim was compulsory and in dismissing it with prejudice when James refused to proceed to trial.

A counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed.R.Civ.P. 13(a). The construction of this rule finds its origin in cases which interpreted the scope of Equity Rule 30.[2] In Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926), the president of the Odd Lot Cotton Exchange brought an action on the basis of an alleged Sherman Act violation, alleging that the New York Cotton Exchange and Western Union had illegally refused to install ticker tape machines and to furnish Odd Lot and its members with continuous cotton quotations. The Court held that the defendants' counterclaim seeking an injunction forbidding Odd Lot from purloining New York's price quotations was compulsory. The scope of "transaction" for the purposes

2. Rule 13(a) is substantially derived from former Equity Rule 30, which governed compulsory counterclaims in equity practice in the federal courts prior to the adoption of the Federal Rules of Civil Procedure. Red Top Trucking Corp. v. Seaboard Freight Lines, Inc., 35 F.Supp. 740 (S.D.N.Y.1940).

of Equity Rule 30 was stated by the Court as follows:

> "Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. * * * Essential facts alleged by appellant enter into and constitute in part the cause of action set forth in the counterclaim. That they were not precisely identical, or that the counterclaim embraces additional allegations, as, for example, that appellant is unlawfully getting the quotations, does not matter. To hold otherwise would be to rob this branch of the rule of all serviceable meaning, since the facts relied upon by the plaintiff rarely, if ever, are in all particulars, the same as those constituting the defendant's counterclaim. 270 U.S. at 610, 46 S.Ct. at 371.

Although Rule 13(a) may have broadened the scope of compulsory counterclaims,[3] the logical relationship test suggested in the *Moore* case has survived as an imprecise but, nevertheless, useful guide to the courts. United Artists Corp. v. Masterpiece Productions, Inc., 221 F. 2d 213, 216 (2d Cir. 1955); Lesnik v. Public Industrials Corp., 144 F.2d 968, 975 (2d Cir. 1944).

We think the relationship between James' counterclaim and Kissell's complaint for foreclosure satisfies this test. Kissell's complaint for foreclosure alleged the validity of the mortgage it had obtained on the Pine Grove Real Estate from Emmanuel and Alta Nell. James was joined as a defendant so that he could assert any prior right he might have in the property. James' counterclaim specifically alleged that the documents relied upon by Kissell were invalid and wrongful as to him. Thus the

central element in both claims was the validity and propriety of the loan and mortgage transactions between Kissell and Emmanuel and Alta Nell. To allow James to litigate this issue in another action in Illinois would create needless multiplicity of suits and ignore the primary objectives of the compulsory counterclaim rule. Our decision is consistent with interpretations of Rule 13(a) by other courts in similar factual situations. Lesnik v. Public Industrials Corp., 144 F.2d 968 (2d Cir. 1944); S.P.A. Ricordi Officine Grafiche v. World Art Reproductions, Inc., 22 F.R.D. 312 (S.D.N.Y. 1958); Reconstruction Finance Corp. v. First National Bank of Cody, 17 F.R.D. 397 (D.Wyo.1955).

James argues that these cases are inapplicable and that the district court should not have dismissed his counterclaim since that court had previously, by implication, held his counterclaim to be permissive. He reasons that by allowing him to file his counterclaim after summary judgment had been entered for Kissell on its complaint for foreclosure, the lower court necessarily determined that his counterclaim was based upon a different transaction or occurrence and, therefore, permissive. This argument is in error for it fails to take into account the liberal discretion given to trial courts under Fed.R.Civ.P. 13(f) to permit a party to allege a counterclaim he failed to set up due to "oversight, inadvertance, or excusable neglect, or when justice requires." The exercise of this discretion is most common in the case of compulsory counterclaims, 3 J. Moore, Federal Practice ¶ 13.33, p. 89 (2d ed. 1968), and the generous action of the trial court in permitting James to assert his claim was not intended and should not be interpreted to decide sub silentio the nature of James' counterclaim.

---

3. Equity Rule 30 treated as compulsory any counterclaim "arising out of the transaction which is the subject matter of the suit" while Rule 13(a) requires only that the counterclaim arise "out of the transaction or occurrence that is the subject matter" of the suit. The inclusion of occurrence in the latter rule was intended to enlarge the class of counterclaims which are compulsory. *See* 3 J. Moore Federal Practice ¶ 13.13 at 32 (2d ed. 1968).

## II

We hold the findings of fact entered by the district court on James' cross-claim against Alta Nell in her individual and representative capacities are clearly erroneous and the judgment in her favor must be reversed.

■ Several of the district court's findings have almost no support in the record and only a brief discussion of those findings is required. Contrary to the finding of the district court, the agreement between Merchants National Bank and Emmanuel and Alta Nell dated November 12, 1964 is a contract to sell the Pine Grove Real Estate and not merely an option to purchase.[4] The agreement, which included elements of a valid land contract, was signed by all parties and provided that title would pass from the seller to the buyer at a closing following the performance of various conditions precedent. This agreement was not invalid for failure of an officer of the Merchants National Bank to sign the agreement. Paul E. Rawley signed for the bank as agent. His signature in this capacity gives rise to a presumption that he was empowered to act for the bank. Since no proof to the contrary was introduced in the trial, we hold that Rawley's signature was binding on the bank. The district court also erred in finding James was not the real party in interest to the contract. The Merchants National Bank, when it entered into the land contract with Emmanuel and Alta Nell, was acting as trustee of a trust of which James was the settlor and sole beneficiary. Emmanuel and Alta Nell were aware of James' relationship to the bank when they entered into the contract on November 12, 1964. James' capacity as beneficiary standing alone might give him the right to enforce the contract between the bank and Emmanuel and Alta Nell. However, if this were not true, the assignment on August 18, 1965 by the bank to James of its rights under the contract gave James standing to seek specific performance and damages for nonperformance of the agreement.

■ The finding of the district court that James was never prepared to perform the contract with Emmanuel and Alta Nell requires more careful scrutiny. Although James' lack of diligence was evident throughout the litigation of this matter, we, nevertheless, hold the record shows that James asserted his rights under the agreement within a reasonable time and at no time waived his right to seek performance and damages. After the contract was entered into on November 12, 1964, James attempted to obtain financing from various sources including the Walter Heller Company for construction of an apartment project on the Pine Grove Real Estate. By the spring of 1965 it appeared that James would be unable to obtain the required financing and Emmanuel began negotiations with The Kissel Company to obtain loans so that he could begin construction himself. James was informed of this development and in April 1965 he apparently considered releasing his interest in the Pine Grove Real Estate. Documents were prepared which provided consideration of twelve thousand five hundred dollars for James' release of his interest in the property. These documents were not introduced into evidence and it is impossible to know whether James ever signed the release. In any event he did not receive the consideration provided and on August 19, 1965 commenced an action for specific performance in the Superior Court of Marion County, Indiana after Emmanuel refused to convey the property. This suit has not been enjoined and, as far as the record shows, is still pending. We hold this evidence demonstrates that the district court's finding that James waived his rights under the contract is clearly erroneous. Therefore, the judgment on James' cross-

4. Even if the agreement were an option, its character as such would not necessarily serve to defeat James' action since breach of the terms of a firm offer could likewise give rise to damages.

claim in favor of Alta Nell in her individual and representative capacities is reversed and the cause is remanded for further proceedings.

Affirmed in part, reversed in part, and remanded for further proceedings.