In re Thomas Nelson SMITH, aka Thomas N. Smith, dba: Sierra Travel Service, dba: Underground Video Arcade, dba: LD & N Service Corp., fdba: Sierra Truck & Auto, and Randi Denice Smith, aka Randi Smith, dba: Sierra Travel Service, dba: LD & N Service Corp., fdba: Sierra Truck & Auto, Debtors.

In re LD & N SERVICE CORPORATION, dba: Chick Inn, Debtors.

Bankruptcy Nos. 282–01976–D–11, 282–05188–D–11.
Motion No. BWG–1.

United States Bankruptcy Court, E.D. California.

Sept. 5, 1985.

Gregg A. Eichler, Sacramento, Cal., Trustee in pro per.

Melvyn J. Coben, Sacramento, Cal., for Trustee.

Chris Scott Graham, Bolling, Walter & Gawthrop, Sacramento, Cal., for Western Sur. Co.

## MEMORANDUM OPINION AND DECISION

LOREN S. DAHL, Bankruptcy Judge.

### FACTS

Thomas N. and Randi D. Smith owned and operated a travel agency known as Sierra Travel Service with locations in Alturas, Susanville, and Truckee, California. The Smiths were signatories to a passenger sales agency agreement (agency agreement) with the Air Traffic Conference of America (ATC). The agency agreement governed the sale of traffic documents for

domestic, air passenger transportation by ATC approved travel agents on behalf of the member airlines. The agency agreement required the Smiths to maintain a bond for the benefit of the member airlines of ATC. On December 27, 1979, Western Surety Company (Western Surety) issued an ATC surety bond to the Smiths in the amount of $10,000. Thereafter, the amount of the bond was increased to $26,000.

The Smiths filed a chapter 11 petition on May 25, 1982 and the court appointed Gregg A. Eichler as trustee on May 31, 1983. During the summer of 1983, ATC notified the debtor that the amount of the bond had to be increased to $36,000. Western Surety agreed to issue the bond provided that the debtor deliver to it a certificate of deposit in the amount of $36,000 payable to Western Surety as trustee. Since the bankruptcy estate did not have cash assets the trustee could not comply with Western Surety's demands. When the bond amount was not increased, ATC notified the trustee that the agency agreement was terminated and that the agreement would continue in effect only for a thirty day grace period until September 23, 1983. ATC also informed the trustee that the air traffic documents and airline identification plates must be surrendered.

The trustee filed a complaint for an injunction and declaratory relief against ATC on September 15, 1983.[1] The court issued a temporary restraining order on September 16, 1983 which enjoined ATC from taking possession of the documents and plates or interfering with the debtor's right to conduct business as a travel agency. On October 4, 1983, the court issued a notice of intended decision which granted the trustee's motion for a preliminary injunction. The preliminary injunction incorporated the terms of the temporary restraining order and it also enjoined the trustee from using the ATC validation plates and ticket stock except upon further court or-

der. ATC filed an answer to the trustee's complaint on October 17, 1983.

On May 3, 1984, the trustee filed a second complaint against ATC for damages arising from willful violations of the automatic stay and preliminary injunction.[2] ATC filed a response to that complaint on July 10, 1984. Thereafter, on August 17, 1984, ATC filed an amended cross-complaint for damages against the trustee. ATC alleged in its cross-complaint that after Eichler was appointed trustee, the debtor sold passenger airline tickets in the amount of $18,145.35 but did not remit payment to ATC or the airlines.

The trustee filed a reply to ATC's cross-complaint on September 10, 1984. In the sixth affirmative defense, the trustee alleged that ATC's claim for damages was a compulsory counterclaim which should have been raised in the answer to the trustee's complaint for an injunction. The trustee continued that since this claim was not raised, it was forever barred.

Based upon the stipulation of the parties, the court granted ATC's motion to consolidate the two adversary proceedings on October 23, 1984. On January 16, 1985, Western Surety paid ATC $18,145.35 pursuant to ATC's demand for payment under the bond. Western Surety also paid ATC's demand for interest due of $482.37 on the principal. After its receipt of $18,627.72, ATC executed a release and assignment of its claim against the debtor to Western Surety. The trustee and ATC have recently agreed to a settlement of all existing claims and a settlement agreement is forthcoming.

The present matter before the court is Western Surety's application for payment of administrative claim. Western Surety contends that it is entitled to be reimbursed by the debtor for $18,627.72 and that this amount is an administrative claim. The trustee opposes Western Surety's applica-

---

1. Adversary number 283–1754.

2. Jack Hempstead, Janet S. Hutchinson, and Jack Saunders were also named as defendants

in the complaint which has the adversary number 284–0203.

tion and argues that at the time ATC filed its answer to the trustee's first complaint on October 17, 1983, ATC knew that it had a claim against the debtor. The trustee points to a letter dated October 4, 1983 (exhibit A to the trustee's memorandum of points and authorities filed on June 24, 1985) from ATC to Western Surety in which ATC made a claim against the bond. The trustee continues that ATC waived any claim it had against the estate because it failed to file a compulsory counterclaim against the trustee.

## DISCUSSION

The first issue is whether or not ATC's claim for damages, which it first asserted in the cross-complaint, is a compulsory counterclaim. Rule of Bankr.P. 7013[3] applies Fed.R.Civ.P. 13 in adversary proceedings. Rule 13(a) provides in part,

(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

The purpose of rule 13(a) is to prevent a multiplicity of litigation and to promote a prompt resolution of all disputes involving common matters. *Local Union No. 11 v. Thompson Electric, Inc.*, 363 F.2d 181, 184 (9th Cir.1966). Courts should give a liberal and broad construction to claims and counterclaims to determine if they arise out of the same transaction or occurrence. *Albright v. Gates*, 362 F.2d 928, 929 (9th Cir.1966); *Magna Pictures Corp. v. Paramount Pictures Corp.*, 265 F.Supp. 144, 152–53 (C.D.Cal.1967); 6 C. Wright and A. Miller, *Federal Practice and Procedure* § 1410 (1971).

The Supreme Court has given the word "transaction" a broad application. In *Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926), the court stated,

"Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. 270 U.S. at 610, 46 S.Ct. at 371.

Turning to the present claims, the trustee alleges generally in his two complaints that ATC acted improperly when it sought to enforce the agency agreement against a debtor in possession. ATC's claim is based upon the debtor's alleged failure to remit ticket sales proceeds to ATC as required by the agency agreement. It is evident that the underlying basis of the two complaints filed by the trustee and ATC's claim are the rights and duties created by the agency agreement. The court finds that ATC's claim is logically related to the trustee's claim. ATC had a compulsory counterclaim which should have been raised in response to the trustee's first complaint.[4]

3. Rule 7013 states,
    Rule 13 F.R.Civ.P. applies in adversary proceedings, except that a party sued by a trustee or debtor in possession need not state as a counterclaim any claim which he has against the debtor, his property, or the estate, unless the claim arose after the entry of an order for relief. A trustee or debtor in possession who fails to plead a counterclaim through oversight, inadvertence, or excusable neglect, or when justice so requires, may by leave of court amend the pleading, or commence a new adversary proceeding or separate action.

4. ATC had another opportunity to file its counterclaim when the trustee filed his second complaint for damages. ATC's answer, filed on July

10, 1984, did not contain a counterclaim. Instead, ATC filed a pleading entitled "cross-complaint for damages" against the trustee on July 17, 1984 which was later amended. Although labeled a cross-complaint, the prayer sought damages from the trustee, an opposing party, for the debtor's alleged failure to remit $18,145.35 in sales proceeds to the ATC or airlines. As a cross-claim cannot be asserted against a party on the opposite side of the action, 6 C. Wright and A. Miller, *Federal Practice and Procedure* § 1431 (1971), the court interprets the crossclaim as a counterclaim. ATC filed this counterclaim after it had filed an answer and it did not seek leave of court to file the counterclaim as Fed.R.Civ.P. 13(f) requires. As such,

The court next must determine the effect on Western Surety of ATC's failure to assert a compulsory counterclaim.

■ A party who fails to raise a compulsory counterclaim is held to waive it and is precluded by res judicata from ever suing upon it again. *Local Union No. 11 v. Thompson Electric, Inc.*, 363 F.2d 181, 184 (9th Cir.1966) *accord Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 276 (9th Cir. 1980).

■ In the present case, ATC failed to raise a compulsory counterclaim when the trustee filed his first complaint.[5] The law is clear that ATC would now be barred from asserting the counterclaim. Western Surety, however, is an *assignee* of any cause of action that ATC had against the debtor.

Cal.Civ.Proc.Code § 368 states,

Assignment of thing in action not to prejudice defense. In the case of an assignment of a thing in action, the action by the assignee is without prejudice to any setoff, or other defense existing at the time of, or before, notice of the assignment; but this section does not apply to a negotiable promissory note or bill of exchange, transferred in good faith, and upon good consideration, before maturity.

According to California law, an assignee stands in the shoes of an assignor and takes his rights and remedies subject to any defenses which the obligor has against the assignor prior to notice of the assignment. 1 B. Witkin, *Summary of California Law*, Contracts, § 751 (1973).

The trustee can assert against Western Surety any defenses which he had against ATC. As noted above, the trustee has argued persuasively that ATC's compulsory counterclaim is barred. Western Surety, therefore, cannot have any rights greater than ATC. The court finds that Western Surety cannot be reimbursed because of the barred counterclaim.

### CONCLUSION

Western Surety's application for payment of an administrative claim is denied. ATC failed to raise a compulsory counterclaim, and, Western Surety, as ATC's as-

---

ATC's counterclaim does not appear to be properly before the court.

Western Surety also argues that at the time ATC filed its answer to the trustee's first complaint on October 17, 1983, ATC's entire claim in the amount of $18,145.35 had not matured. Instead, Western Surety contends that since ATC had made a demand for only $13,674.37 against the bond in the October 4, 1983 letter, the additional amount of $4,470.98 arose after ATC's answer and should not be barred as a compulsory counterclaim.

The court is not persuaded by Western Surety's argument. On October 4, 1983, the court's notice of intended decision enjoined the trustee from using the ticket stock and ATC validation plates except upon further court order. Hence, on October 4, 1983, ATC could have checked its records to determine the total amount allegedly owed by the estate. ATC's entire claim had matured at the time it filed its answer.

5. Western Surety argues that Fed.R.Civ.P. 13 does not act as a bar when consolidation is granted. Western Surety cites *Cyprus Corp. v. Whitman*, 93 F.R.D. 598 (S.D.N.Y.1982), *Reynolds v. Hartford Accident and Indemnity Co.*, 278 F.Supp. 331 (S.D.N.Y.1967), and *Speed Products Co. v. Tinnerman Products*, 222 F.2d 61 (2d Cir.1955) in support of its argument. The court has reviewed these cases and finds that they do not support Western Surety's argument. In *Cyprus*, the court dismissed a second suit brought by the defendant of a prior suit. The court found that the defendant should have asserted a compulsory counterclaim in the first suit. In the *Reynolds* case, the court did not discuss consolidation. In *Tinnerman* the appellate court held that although the claims of a plaintiff's second suit should have been raised in a prior suit, the trial court had not erred by refusing to dismiss the second suit. The trial court found that, upon motion, it would have allowed the plaintiff's claim to be included in the original complaint by amendment. The appellate court observed that from a practical viewpoint it did not matter whether the plaintiff's claim should have been stated by an amendment in the first action or by a complaint in the second action since consolidation had been ordered and all issues would be tried together.

In the present case, as noted in footnote 4, it does not appear that ATC's counterclaim is even properly before the court. Thus, even though the two adversary proceedings have been consolidated, ATC still has not asserted the compulsory counterclaim which it should have asserted in the first suit.

signee, is bound by ATC's omission. This memorandum opinion and decision shall constitute findings of fact and conclusions of law. Counsel for the trustee shall prepare and submit an order consistent with this decision.