**SPEED PRODUCTS CO., Inc.,**
**Plaintiff-Appellee,**

v.

**TINNERMAN PRODUCTS, Inc.,**
**Defendant-Appellant.**

**SPEED PRODUCTS CO., Inc.,**
**Plaintiff-Appellee,**

v.

**TINNERMAN PRODUCTS, Inc.,**
**Defendant-Appellant.**

Nos. 172, 173, Docket 23012, 23013.

United States Court of Appeals
Second Circuit.

Argued Feb. 8, 1955.

Decided April 15, 1955.

Harry Price and Charles M. Palmer, New York City, for plaintiff-appellee.

Bates, Teare & McBean, Cleveland, Ohio, Darby & Darby, Floyd H. Crews, New York City, Albert R. Teare, Cleveland, Ohio, for defendant-appellant.

Before CLARK, Chief Judge, HINCKS, Circuit Judge, and SMITH, District Judge.

HINCKS, Circuit Judge.

To understand the issues raised on this appeal, it is necessary that we review the highlights of the extended litigation over trademarks waged by the parties. Speed Products, Inc. (hereinafter called "Speed") commenced an action in the United States District Court for the Southern District of New York against Tinnerman Products, Inc. (hereinafter called "Tinnerman") in 1946. This was Civil Action 38–662 hereinafter referred to as the "first action." In this first action Speed sought the following relief: (1) Registration under Rev.Stat. § 4915, 35 U.S.C.A. § 63,* of a trademark, No. 460,846, after registration had been denied in the Patent Office, and (2) a declaratory judgment that two other registered trademarks owned by it were valid and did not infringe any registered trademarks belonging to

* Now 35 U.S.C.A. §§ 145, 146.

Tinnerman, or, in the alternative, that Tinnerman's registered trademarks were invalid. Tinnerman sought relief by way of a counterclaim alleging that Speed was using the above unregistered trademark, No. 460,846, in such a way as to infringe three registered trademarks owned by Tinnerman, viz: No. 244,038, No. 347,986 and No. 352,197. In this counterclaim Tinnerman prayed for a judgment declaring that its three trademarks were valid and its exclusive property "as applied to fastening devices, including staples," and for an injunction against infringement by Speed.

The trial court held that Speed was entitled to registration of its trademark No. 460,846 and also held that its two previously registered trademarks, No. 246,812 and No. 416,025, were valid and did not infringe any of Tinnerman's registered trademarks. On the counterclaim the trial court held that Tinnerman's three registered trademarks were valid but that they were not infringed by Speed. Tinnerman appealed, and Speed cross-appealed from so much of that judgment as accorded validity to Tinnerman's trademarks.

On that appeal, this court held, 179 F.2d 778, that Speed was not entitled to register No. 460,846. We also held that two of Tinnerman's trademarks were invalid: (1) No. 347,986 designated as "Speed Clip," and (2) No. 352,197 designated as "Speed Nuts" because "descriptive" in that "both are dominated by the word 'SPEED' which describes one of the qualities of the clip and nuts." We also held that Tinnerman's trademark "Speed Nut," No. 244,038, was valid but subject to collateral attack in this country. We did *not* decide whether Speed's registered trademarks infringed Tinnerman's marks or whether Speed's registered trademarks were valid. And we held that Tinnerman would be entitled to injunctive relief on its counter-

claim only on proof (1) that one or more of its marks (two of which marks were invalid and the third subject to collateral attack) had acquired a secondary meaning before Speed or its predecessor began to use in the field of stationery staples the mark "Speed Fastener," No. 246,812, that being—as the record then stood—its earliest use of "Speed" as a mark, and (2) that confusion would result between Speed's present use of that mark and Tinnerman's trademarks. For proofs on those issues and for further findings thereon by the trial court, the first case was remanded.[1]

On remand, the trial court held that Tinnerman was not entitled to any relief on its counterclaim. This holding was based on a finding that Tinnerman had failed to prove that its trademark had acquired a "secondary meaning" before Speed began using its mark designated as "Speed Fastener," and that confusion would result. The trial court also held that Tinnerman was estopped from seeking the relief prayed for in the counterclaim on the ground of laches. The counterclaim was accordingly dismissed, and the present appeal in the first action is from that decree of dismissal. This we now discuss.

The trial court, for the purpose of deciding the "secondary meaning" issue, had to find when Speed first began using the mark "Speed Fastener" in connection with the sale of office and stationery type staples. It found that the proper date was 1926. Tinnerman challenges this finding contending that on the first trial the district court had held that the earliest date of Speed's use was 1936 and that this finding had been affirmed by the Court of Appeals. Consequently, Tinnerman argues, on the ground of *res judicata* the trial court on remand was precluded from finding any date other than 1936 as the "critical date." We turn to consider the three

---

1. We did not expressly rule on Speed's second claim in the first action and the trial court interpreted the remand to mean that it was to adjudicate the rights there involved. In so doing the trial court held that both of Speed's trademarks, although invalid because descriptive, were entitled to protection because of acquired secondary meaning.

grounds on which this argument is based.

While the Appellate Court did quote Finding No. 6 as made by the District Judge on the first trial, we do not think that it, or the trial court, intended to give that finding the interpretation urged by Tinnerman. This conclusion is reached by reading Finding 6 in context with Findings 4 and 5. These three findings we set out in a footnote.[2] It appears from Finding No. 4 that the trademark "Speed Fastener," No. 246,812, was registered in 1928. Finding No. 5 indicates that "thereafter" the mark was used by Speed's predecessor, Parrot Speed Products Corporation, in its sale of office and stationery type staples. It does not purport to state precisely when the mark was *first* used nor does Finding No. 6 so state. Finding No. 6 is thus seen to mean only that *at least* from 1936 on the mark was used by Speed. The earliest date of such use does not appear to have been made the subject of a specific finding.

Tinnerman stresses a passage in the opinion of the Appellate Court wherein it stated that "the only question remaining is whether defendant's (Tinnerman) trademarks had acquired a secondary meaning before plaintiff (Speed) entered the field."[3] A fair reading of the whole opinion indicates that all that was meant was that the "only remaining question" *for the court to discuss in its opinion* was that of secondary meaning in Tinnerman's marks before the critical date.

It did not mean, as Tinnerman seems to contend, that the trial court could not, after a consideration of the pertinent evidence presented on remand, find that the "critical date" was other than the year 1936, or, put in another way, that the remand was limited solely to the question of whether Tinnerman's trademarks had acquired a secondary meaning after 1936. Our interpretation is further supported by the final paragraph of the opinion. 179 F.2d at page 782.

Thirdly, Tinnerman argues that the summary denial of Speed's petition for rehearing on the prior appeal, indicates appellate affirmance of 1936 as the critical date. But the denial did not mean that at all. It simply meant that the Appellate Court considered that its opinion had sufficiently dealt with all issues then before it on the record as it then stood, and that it should not speak further until the issues of secondary meaning and critical date had been fully developed on remand.

We conclude that the scope of the remand was properly interpreted by the trial court.

Not only was the finding by the trial court within the proper scope of the remand but also it is supported by a large quantity of convincing evidence. Tinnerman, aside from its *res judicata* argument just reviewed, seems not to challenge that finding. However that may be, we are satisfied that it is not "clearly erroneous" within the meaning

**2.** "4. Parrot Speed Fastener Corporation, a New York corporation, was organized by Jack and Belle Linsky aforenamed on August 16, 1926. On September 11, 1928, that corporation registered, under Serial No. 246,812, its trademark Speed Fastener with lines indicating rapid motion running through the words for stapling machines and tools for fastening together sheets of paper and similar sheet material and for stapling wire screening and wire fencing and for other stapling purposes in class 23, cutlery, machinery, etc."

"5. To an extent thereafter the Speed Fastener mark appeared on the containers not only of stapling machines but on quantities of staples sold for use therewith by Parrot Speed Products Corporation."

"6. From and after August, 1936, Parrot Speed Fastener Corporation and Speed Products Company and plaintiff applied on the containers for many of its products, including at least sometimes its staples, the double winged arrow with the word SPEED imposed thereon. The device was small and usually comparatively inconspicuous. The phrase Speed Fastener on the containers for the staples or other trade names was also used and was emphasized in size and position."

**3.** Enclosed material is supplied.

of Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746; United States v. Yellow Cab Co., 338 U.S. 338, 70 S.Ct. 177, 94 L.Ed. 150. Accordingly, we accept 1926 as the critical date.

The next key question as to the counterclaim was whether any of Tinnerman's registered trademarks acquired a secondary meaning before that date. The trial court concluded that the only mark belonging to Tinnerman that could conceivably qualify for this purpose was the trademark "Speed Nut" which had been patented by Tinnerman in 1924 as a "Spring Nut." It was also found that the nut was sold under the mark "Speed Nut" in the early part of 1924 though Tinnerman did not register it until April 5, 1928. "Speed Nut," as the trial court found, was in the field of staples, clips and fasteners. These findings do not appear to be disputed by Tinnerman. Thus the problem was narrowed to the question of whether Tinnerman's mark "Speed Nut" attained a secondary meaning in the two-year period (1924–1926) before Speed began using the trademark "Speed Fastener" in its sale of staples. On this question the lower court held in favor of Speed.

■■ Tinnerman does not claim that the lower court improperly defined the doctrine of secondary meaning. Whether a particular trademark has acquired a secondary meaning is a question for the trier of the facts. LeBlume Import Co. v. Coty, 2 Cir., 293 F. 344; G. & C. Merriam Co. v. Saalfield, 6 Cir., 198 F. 369; 1 Nims "Unfair Competition and Trademarks," § 39. Again Rule 52(a) comes into play: we cannot reverse the lower court unless its findings of fact are clearly erroneous, which Tinnerman does not contend. On the ground that secondary meaning and confusion was not established we affirm the dismissal of the counterclaim. Hence, there is no need to rule upon the equitable defenses raised by Speed.

While the remand was pending Speed commenced a second action in the same court against Tinnerman (C.A. 60–158, hereinafter referred to as the "second action"). This action was consolidated with the first action when the first, on remand, came on for trial. Speed alleged that its trademark "Speed Fastener" had been used since 1926 in connection with its sale of office-type stationery staples. The complaint further alleged that the mark "Speed Fastener" had been so extensively publicized and advertised in Speed's sale of staples that it acquired a secondary meaning in the trade; that Tinnerman, prior to 1932, had never manufactured or sold clips under the mark "Speed," but that from 1932–1937 it had expanded its business to do so and in 1937 had registered the trademark "Speed Clip." In the second action, Speed sought a judgment declaring that Tinnerman's use of the trademark "Speed Clip" was a violation of Speed's exclusive rights and prayed for injunctive relief against Tinnerman. In this action the trial court entered judgment for Speed and the remainder of this opinion is addressed to the appeal from that judgment.

Tinnerman rests his whole case on appeal on the theory that the doctrine of res judicata precluded Speed from instituting the second action. It is contended that Speed could have sought in the first action all of the relief which it presently seeks in the second action and since "the parties and facts are the same in both actions, and inasmuch as judgments have been rendered by the District Court * * * and by the Court of Appeals * * *" Speed is estopped from bringing the second action. The lower court, by observing that the complaint in the second action was proper subject-matter for an amendment to Speed's complaint in the first action, under Rule 15(a) of the Federal Rules of Civil Procedure, overruled the defense of res judicata.

■■ To successfully assert res judicata in a subsequent action it is

elementary that the judgment in the former action must have been final. Restatement of the Law of Judgments, § 41. The court below thought that *res judicata* was not here applicable because the first action had been remanded, —not finally adjudicated. In this the trial court was not entirely correct. Consistent with the opinion of the Court of Appeals in the first action, the only final judgment possible in that action was on Speed's first claim which was for registration of its trademark No. 460,846. Speed's second claim in the first action and Tinnerman's counterclaim were remanded for further proceedings. No final judgments had been entered as to these last two claims and hence they could not be pleaded as a bar, on the conventional doctrine of *res judicata* alone, to Speed's second action commenced in the District Court while the first action was still pending on remand.

The question arises as to whether the final judgment entered as to Speed's first claim (for registration) in the first action may be set up as a bar to his institution of the second action. It is obvious that even though remand was pending on other claims involved in the first action Speed could not use the remand proceedings as an occasion to relitigate a claim which had been finally adjudicated. But Tinnerman, as the discussion below demonstrates, is mistaken when it asserts that the second action was barred on the ground of *res judicata* solely because the claim raised therein might have been sought in the previous action.

The *res judicata* problem here really involves two separate questions: (1) Was Speed's first claim in the first action, said claim being the only one finally adjudicated in that action, the same as the one he subsequently stated in the second action? (2) Is Speed's second action barred because by its content it was subject-matter of a compulsory counterclaim which, under Rule 13, should have been pleaded in Speed's reply to Tinnerman's counterclaim in the first action?

As to the first question just stated, we note that the first claim in the first action was for registration of a trademark, (No. 460,846) and in the second action Speed sought an injunction on the ground that Tinnerman's mark "Speed Clip" infringed Speed's trademark "Speed Fastener." (No. 246,812) These two claims present, rather obviously we think, at least in part different questions of law and fact and the relief sought in each is almost entirely different.

■ If these two claims had been the same then Tinnerman could use the judgment in the first action as an absolute bar to the bringing of the second action—and *if that were the case Tinnerman's theory that the former judgment was a bar to all matters raised or which might have been raised in the former proceeding would be clearly sustainable.* Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195; Last Chance Mining Co. v. Tyler Mining Co., 157 U.S. 683, 15 S.Ct. 733, 39 L.Ed. 859; Southern Pacific Railroad Co. v. United States, 168 U.S. 1, 18 S.Ct. 18, 42 L.Ed. 355; Tait v. Western Maryland Railroad Co., 289 U.S. 620, 53 S.Ct. 706, 77 L.Ed. 1405.

But Tinnerman has confused that situation with one that calls only for the application of the doctrine of collateral estoppel. If the two actions involve *different* claims or causes of action, as is the case here, the subsequent action is not barred by the former even though the parties in both actions are the same. It is in this type of case that collateral estoppel is applicable—but that doctrine only means that matters *actually litigated* in the first action may not be retried in the subsequent action; *it does not mean that questions which were not, but might have been, raised in the former action cannot be litigated in the second action,* or that the subsequent action is barred. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898; International

Building Co. v. United States, 8 Cir., 199 F.2d 12; Scott, Collateral Estoppel by Judgment, 56 Harv.L.R. 1; Restatement of the Law of Judgments, § 68. Since, in the prior proceedings in the first action the question of when Speed first commenced using the mark "Speed Fastener" was not finally adjudicated, Speed was free to allege and prove the 1926 date in the second action.

█ Being thus satisfied that the ruling of the judge below did not collide with the law of collateral estoppel, it only remains to consider whether the assertion of the claim stated in the second action was permissible under the Federal Rules of Civil Procedure. It will be remembered that in the first action Tinnerman had filed a counterclaim seeking a declaration that its marks were valid and infringed by Speed and for an injunction against Speed. We think it clear that there was a logical relationship between the claim in Speed's second action and Tinnerman's counterclaim in the first action. Hence, under Rule 13(a) of the Federal Rules of Civil Procedure, the claim of Speed's second action was subject-matter for a compulsory counterclaim. See Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750; Lesnik v. Public Industrials Corp., 2 Cir., 144 F.2d 968; United Artists Corporation v. Masterpiece Products, Inc., 2 Cir., 221 F.2d 213. To avoid the bar of *res judicata* in a subsequent action, Speed was obliged to plead it in the first action before Tinnerman's counterclaim had been finally adjudicated. 3 Moore's Federal Practice, Par. 13.08.

█ This was not done. However, the trial judge, in his opinion, stated that with the first action before him on remand, he could, and on motion would have, allowed the claim to be included in the original complaint by amendment under Rule 15(a). He observed that it made no practical difference that, instead, the claim had been pleaded in a separate complaint in the second action. Certainly, with the first

action before the trial court on remand, an amendment of Speed's reply to Tinnerman's counterclaim to include the claim was permissible under Rule 13(f) in view of the absence of any contention by Tinnerman of prejudice to it or bad faith on the part of Speed. See 3 Moore's Federal Practice, Par. 13.33. If, as he stated, the trial judge would have allowed an amendment of the complaint, it is plain that he would have allowed an amendment under Rule 13(f) if such had been sought. By such an amendment, Speed might have tendered the very same issues as those which it raised, instead, in the second action. From a practical viewpoint it made no difference whether the claim should be stated by an amendment in the first action or by complaint in a second action: by consolidation of the two actions for trial all open issues in both actions were brought on for trial together. Nor did any different legal effect result from pleading the claim in a second complaint since at that time no final judgment as to Tinnerman's counterclaim had as yet been entered in the remand proceedings.

Affirmed as to both judgments.