The CYPRUS CORPORATION, Plaintiff,

v.

Martin J. WHITMAN, M. J. Whitman & Co., Inc., and M. J. Whitman & Co., Inc. Pension Plan, Defendants.

No. 82 Civ. 525–CSH.

United States District Court,
S. D. New York.

March 10, 1982.

Silverman & Harnes, New York City, for defendants; Jcan T. Harnes, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

On January 27, 1982, plaintiff The Cyprus Corporation ("Cyprus") filed a complaint in this Court against defendants Martin J. Whitman, M. J. Whitman & Co., Inc., and M. J. Whitman & Co., Inc. Pension Plan (hereinafter sometimes referred to as the "Whitman interests"). Cyprus's complaint alleged jurisdiction under section 44 of the Investment Company Act of 1940, 15 U.S.C. § 80a–43, and section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa. By this action Cyprus sought to preliminarily and permanently enjoin defendants from soliciting any proxies in connection with the 1982 annual meeting of Cyprus stockholders; exercising any proxies they may have obtained or will obtain from Cyprus stockholders; and voting any shares of Cyprus stock at the 1982 annual meeting. Cyprus also claims damages, attorneys' fees and costs.

The case is now before the Court on defendants' motion to dismiss that portion of the complaint seeking preliminary injunctive relief upon the ground of *res judicata*; staying all other proceedings pending the determination of an action between Cyprus and certain of the Whitman interests in the United States District Court for the Western District of Pennsylvania; or, in the alternative, transferring this action to the Western District of Pennsylvania, pursuant to 28 U.S.C. § 1404(a), upon the ground that the claims asserted in the complaint in this Court are compulsory counterclaims in the Western District of Pennsylvania action. Cyprus resists all aspects of defendants' motion.

Resolution of this motion requires a relatively detailed description of the parties and the disputes that have arisen between them.

## I.

In its complaint in this Court, Cyprus alleges that it is a closed-end investment

Shea & Gould, New York City, for plaintiff; Martin I. Shelton, Fran M. Jacobs, New York City, of counsel.

company incorporated under the laws of Delaware, and registered under the 1940 Act. It maintains its executive offices in Pittsburgh. As of December 21, 1981, Cyprus had issued and there were outstanding 33,866,692 shares of common stock, and 2,378,094 shares of preferred stock. Both the common and preferred stock of Cyprus are registered for trading under the 1934 Act, and are listed and registered for trading on the American Stock Exchange.

Defendant Martin J. Whitman is alleged to be a broker-dealer, and president of defendant M. J. Whitman & Co., Inc. Whitman is further alleged to be the sole beneficiary under a Keough Plan which owns 700 shares of Cyprus preferred stock.

Defendant M. J. Whitman & Co., Inc. is alleged to be a securities brokerage firm, providing investment banking and brokerage service for its clients, some of whom are holders of Cyprus preferred stock that was purchased through M. J. Whitman & Co. at Whitman's personal recommendation.

Defendant M. J. Whitman & Co., Inc. Pension Plan is alleged to be a pension plan established by the brokerage firm; Martin J. Whitman is said to be the sole trustee and principal beneficiary of the pension plan, which owns 5,800 shares of Cyprus preferred stock.

The Whitman interests have their executive offices in New York City.

Having identified the parties in the action pending here, it is now appropriate to transfer our gaze west to Pittsburgh, where by a complaint dated January 8, 1982 (19 days prior to the filing of the action here), certain of the Whitman interests brought suit against Cyprus and Cyprus-related defendants in the Western District of Pennsylvania. That action, bearing civil docket No. 82–0028, has been presided over by the Honorable Louis Rosenberg, U. S. D. J. It will hereafter be referred to as the "Pittsburgh action."

The plaintiffs in the Pittsburgh action were the M. J. Whitman & Co., Inc. Pension Plan and Martin J. Whitman. These interests, invoking the same jurisdictional statutes as does Cyprus here, sued the Cyprus Corporation and certain other defendants for a preliminary injunction restraining and enjoining the Cyprus shareholders' annual meeting scheduled for January 19, 1982; for a permanent injunction restraining and enjoining the defendants from issuing false and misleading proxy solicitation material in connection with the election of directors to represent the preferred stockholders of Cyprus; for a final mandatory injunction requiring defendants to nominate as directors to represent the preferred stockholders, persons who are not affiliated with defendants and who will represent the interests of the preferred stockholders; a declaration that the action be a class action; and awarding to plaintiffs costs and attorneys' fees.

In addition to Cyprus, the defendants in the Pittsburgh action included Rockwell-Cyprus Associates, alleged to be a Pennsylvania partnership which in September, 1981 had acquired 17% of the outstanding common stock of Cyprus in a private sale from the former chairman of the board of Cyprus; and the following eight individuals. Williard F. Rockwell, Jr. and Joseph P. Kazickis were named to the Cyprus board of directors simultaneously with the purchase by Rockwell-Cyprus Associates of the Cyprus common stock referred to above. Rockwell and Kazickis were also named the sole members of the nominating committee empowered to select nominees for Cyprus's entire board in 1982. Rockwell and Kazickis, acting in their capacity as nominating committee, named defendants Frederick E. Baxter, Jr., Clifford V. Brokaw, III, Frank G. Jamison, and Powell Robinson, Jr. as the representatives of the holders of Cyprus preferred stock. Two other individuals, Harris B. Massey and Cruse W. Moss, are named as defendants in the Pittsburgh action, but no allegations against them appear in the body of the complaint.

In their complaint in the Pittsburgh action, the Whitman interests alleged their ownership of shares of preferred stock in Cyprus, and that they brought the action on their own behalf and on behalf of all holders of preferred stock in the company. The

complaint alleged that, under the Cyprus certificate of incorporation, the preferred stockholders were entitled to elect 50% of the board of directors. Since the company has eight directors, it follows that the preferred stockholders are entitled to elect four directors, and the common stockholders are entitled to elect four directors. The complaint further alleged that, under the Investment Company Act, preferred stockholders have the right to elect at least two directors.

The Whitman interests alleged in the Pittsburgh action that defendants conspired with each other to deprive the preferred stockholders of the board representation guaranteed them by the Act and Cyprus's certificate of incorporation. In furtherance of that conspiracy, defendants were charged with issuance of false and misleading proxy solicitation material, dated December 28, 1981, in preparation for the annual stockholders' meeting on January 19, 1982. The proxy statement was said to be false and misleading because it omitted material information with respect to the relationships of certain of the defendants.

Defendants never asserted any counterclaims in the Pittsburgh action, as further detailed under Point II, *infra*. In this Court, however, Cyprus alleges that the Whitman interests, at an unspecified time prior to December 3, 1981, embarked upon a plan and conspiracy to act together and with others for the purpose of acquiring, holding, voting, and disposing of Cyprus preferred stock, as well as the illegal solicitation of proxies from Cyprus stockholders in respect of the 1982 annual meeting, all in violation of that same Investment Company Act of 1940 and Securities Exchange Act of 1934 which the Whitman interests invoked in the Pittsburgh action against Cyprus and its related defendants.

Having identified the parties in both actions, and summarized the claims which they have asserted against each other, I now turn to a consideration of what has happened in the Pittsburgh action.

## II.

The first judicial response to the Whitman interests' Pittsburgh action was an order which Judge Rosenberg signed at 5:55 p. m. on January 14, 1982. That order recites the commencement of the action, and the Court's initial effort "to hear evidence for determining whether a preliminary injunction should issue..." The Court's order of Thursday, January 14, 1982 continues:

"... it is obvious that the parties cannot be heard fairly, fully, completely and for the benefit of the public, except by extending the time of hearing and that the stockholders' meeting of the Cyprus Corporation to be held on Tuesday, January 19th, 1982 at the William Penn Hotel, Pittsburgh, Pennsylvania, be and the same is hereby temporarily held in abeyance until the parties have had full and adequate opportunity to present the matters before the court,

"IT IS HEREBY ORDERED that this case for a preliminary injunction be continued until Monday morning at 10:00 o'clock a. m., until all parties shall have had full and adequate opportunity to present such evidence as may be pertinent and necessary for the court's final determination; and that the stockholders' meeting to be held Tuesday, January 19th be and the same is hereby temporarily postponed until after the hearing is held. In the continuation of the hearing for the purpose of hearing all the parties and in the postponement of the stockholders' meeting, the court as of now has made no findings and no inferences of merit or lack of merit on the part of anyone are to be drawn from the continuation of this hearing and the temporary postponement of the stockholders' meeting of January 19th until after the hearing of this case."

A considerable amount of testimony was thereafter taken before Judge Rosenberg, although the precise dates do not appear in the record on the motion before me, nor has a complete transcript been submitted. On January 28, 1982, Cyprus filed an answer in the Pittsburgh action which consisted of a

general denial and certain affirmative defenses, consisting of laches, unclean hands on the part of plaintiffs, an allegation that the plaintiffs were not acting in good faith but for their personal gain, and failure to state a claim upon which relief could be granted. Cyprus did not assert any counterclaims against the Whitman plaintiffs in the Pittsburgh action.

Presumably pursuant to Judge Rosenberg's rules of practice, Cyprus filed a trial memorandum and proposed findings of fact in the Pittsburgh action. The selected pages from the Cyprus trial memorandum which accompany Whitman's present motion do not reflect the date on which that memorandum was filed and served. The supplemental proposed findings of fact submitted by Cyprus, also undated, were received by Whitman's New York counsel on February 9, 1982, and, one supposes, were submitted to Judge Rosenberg at least a day earlier.

Cyprus's trial memorandum in the Pittsburgh action contended that, as early as December 3, 1981, Whitman had stated in a telephone conversation with the president of Cyprus that he, Whitman, represented an "informal group" which collectively owned over 500,000 shares of Cyprus preferred stock. Cyprus argued in its trial memorandum that no Schedule 13D statement had ever been filed on behalf of that "informal group," in violation of the 1934 Act. That alleged failure to file is reiterated as Cyprus's first cause of action in the complaint filed in this Court. Whitman's allegedly wrongful failure to file a Schedule 13D statement is further set forth in Cyprus's proposed findings of fact to Judge Rosenberg (¶ 33), together with a threat allegedly made by Whitman to the president of Cyprus "that he [Whitman] might propose his own slate of directors composed entirely of preferred stockholders and thereby take control of the corporation." *Ibid.*

On February 9, 1982, Judge Rosenberg issued two orders. The first order, preceded by a memorandum opinion, denied the defendants' motion to vacate the order of January 14, 1982. The memorandum gives further particulars as to the case's procedural history, and deals with objections made by the Whitman interests to a supplemental proxy statement proposed by Cyprus.

Judge Rosenberg's second order of February 9, 1982 recites the presentation by the parties of additional evidence with respect to Whitman's originally requested relief, the submission by Cyprus of a supplemental proxy, and summarizes further stipulations and contentions of counsel. The Court then ordered that its order of January 14 be replaced by the February 9 order, and that the meeting of the stockholders of Cyprus, as originally set for January 19, be fixed for March 12, 1982, "for the same purpose and to the same extent and validity as if it were held originally on January 19, 1982." The supplemental proxy prepared by Cyprus was approved by the Court, and further instructions included in the order in respect of mailing. As far as the Whitman interests were concerned, their rights (including the right to engage in a proxy war) were adjudicated by Judge Rosenberg in his February 9 order as follows:

"(6) The rights of the plaintiffs as owners of shares of preferred stock, or as legal trustees of such shares of stock for the benefit of others, or any other person legally entitled thereto shall have their rights respected for the selection and election of directors at the forthcoming meeting to represent the preferred stockholders and to any legal, available means for disseminating the pros and cons of why stockholders may or may not vote for or against candidates or the amendments to the By-laws.

"(7) The defendants shall submit forthwith a list of all preferred stockholders of record as of December 21, 1981 and their addresses to the plaintiffs or to any other parties entitled under the law to such list, or to make available the records to any preferred stockholders who may ask to examine the same in the company's office.

The end of the order recites, in the handwriting of counsel, that findings of fact and conclusions of law were waived.

Subsequent to February 9, 1982, further motion practice took place in the Pittsburgh action. It is not necessary to describe those events in detail, except to say that on March 2, 1982 counsel for the parties appeared before Judge Rosenberg on the Whitman interests' motion for a protective order in respect of a notice of deposition served upon the Whitman interests on February 23. Judge Rosenberg expressed the view that the question that was before him "had only to do with proxy," and that "the injunction was granted for the purposes for which it was brought." Tr. 4, 6. Judge Rosenberg further observed that he had not granted the Whitman interests' application for class certification, and had also denied the defendants' motion to vacate his order of January 14. *Id.* at 6, 7. That colloquy prompted counsel for defendants in the Pittsburgh action to "inquire of the Court why the case continues." *Id.* at 9. The judge responded that "[s]o far as we are concerned, the remedy was granted for what the Court saw fit for the complaint as made with the agreement of the parties," *id.* at 9; the motions respecting discovery were then withdrawn. Insofar as the record before me discloses, that is the latest development in the Pittsburgh action.

## III.

## COMPULSORY COUNTERCLAIM

The Whitman interests contend that the claims asserted by the complaint in this Court are compulsory counterclaims to their suit in Pittsburgh, and that Cyprus was therefore required to have asserted them in that action. F.R.Civ.P. 13(a)[1] defines a compulsory counterclaim as one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."[2] In

1. Rule 13(a) provides in full:
   "(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13."

2. The District Court for the Western District of Pennsylvania can acquire jurisdiction over M. J. Whitman & Co., Inc., the only additional party defendant named in Cyprus's claim in this Court. The Court of Appeals for this Circuit has stated that "This restriction should be limited to cases of inability to obtain personal jurisdiction over the additional defendants. Basic considerations of fairness dictate that potential parties cannot be forced to enter litigation without due service of process upon them and that the compulsory counterclaim must be limited to permit of the operation of this principle." *United Artists Corp. v. Masterpiece Productions, Inc.*, 221 F.2d 213, 217 (2d Cir. 1955). In the case at bar, Cyprus asserts

as jurisdictional bases against the Whitman interests section 44 of the Investment Company Act of 1940, 15 U.S.C. § 80a–43, and section 27 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78aa. Due service of process upon M. J. Whitman & Co., Inc. can be obtained under § 27 of the Securities and Exchange Act which provides that in any suit or action to enforce liability under the Act or any rule or regulation thereunder, "process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found." 15 U.S.C. § 78aa. As the Court of Appeals for this Circuit has explained, "It is simply too late in the day to argue that Section 27 does not authorize nationwide service of process on any individual named in the complaint, provided, of course, the complaint states a claim under the 1934 Act." *Mariash v. Morrill*, 496 F.2d 1138, 1142 (2d Cir. 1974).

Section 27 also provides that such suits may be brought in any district wherein any act or transaction constituting the violation occurred. Thus, the jurisdiction of the Pittsburgh court does not depend on whether M. J. Whitman & Co., Inc. performed an act or transaction in that district; "it is sufficient if there occurred in that district 'any act or transaction' by any defendant in furtherance of a manipulative scheme in which [M. J. Whitman & Co.] knowingly participated." *Wyndham Associates v. Bintliff*, 398 F.2d 614, 620 (2d Cir.), *cert. denied*, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968). Cyprus argued at oral argument on the

determining whether the claim and the purported counterclaim arise out of the same "transaction or occurrence," courts in this Circuit are required to assess whether there is a "logical relationship" between them rather than whether there is an absolute identity of facts and issues. *United States v. Aquavella*, 615 F.2d 12, 21 (2d Cir. 1979).[3] This "logical relation" test has its origins in the leading Supreme Court case of *Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed.2d 750 (1926), in which the Court held a counterclaim compulsory, explaining:

> " 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. . . . That they are not precisely identical, or that the counterclaim embraces additional allegations . . . does not matter. To hold otherwise would be to rob this branch of the rule of all serviceable meaning, since the facts relied upon by the plaintiff rarely, if ever, are in all particulars the same as those constituting the defendant's counterclaim."

270 U.S. at 610, 46 S.Ct. at 371.[4]

■ This broad and flexible approach furthers the primary purpose of Rule 13(a). As explained by the Supreme Court:

> "The requirement that counterclaims arising out of the same transaction or occurrence as the opposing party's claim 'shall' be stated in the pleadings was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters. The Rule was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint. See, e.g., *United States v. Eastport S.S. Corp.*, 255 F.2d 795, 801–802."

*Southern Construction Co. Inc. v. Pickard*, 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962) (per curiam).[5] See also *United States v. Heyward-Robinson Co.*, 430 F.2d 1077, 1082 (2d Cir. 1970), *cert. denied*, 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971). Thus, "a counterclaim which is compulsory but is not brought is thereafter barred." *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469, 94 S.Ct. 2504, 2506, 41 L.Ed.2d 243 (1974). See also *Harris v. Steinem*, 571 F.2d 119, 122 (2d Cir. 1978) ("a compulsory counterclaim, unless specifically excepted, must be pleaded or be forever barred"). Where a party institutes a second action based upon a compulsory counterclaim in a still pending action,

---

motion to transfer that the Pittsburgh action itself was an act by the Whitman interests in furtherance of their alleged manipulative scheme.

Section 44 of the Investment Company Act of 1940 contains comparable provisions. 15 U.S.C. § 80a–43.

**3.** Earlier cases in which the Court of Appeals for this Circuit has applied the "logical relation" test include *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978); *Newburger, Loeb & Co., Inc. v. Gross*, 563 F.2d 1057, 1071 (2d Cir. 1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978); *United Artists Corp. v. Masterpiece Productions*, 221 F.2d 213, 216 (2d Cir. 1955); *Lesnik v. Public Industrials Corp.*, 144 F.2d 968, 975 (2d Cir. 1944). If it should be suggested that Third Circuit authority controls the question of whether particular claims are compulsory counterclaims in an action commenced in the Western District of Pennsylvania, I note that the case law in that circuit is in accord with the Second Circuit authority cited *supra. See, e.g., Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631 (3rd Cir.

1961); *Loader Leasing Corp. v. Kearns*, 83 F.R.D. 202 (W.D.Pa.1979).

**4.** *Moore v. New York Cotton Exchange* was decided under Equity Rule 30, the predecessor to F.R.Civ.P. 13(a).

**5.** In *United States v. Eastport Shipping Corp.*, 255 F.2d 795, cited by the Supreme Court in *Pickard, supra*, 371 U.S. at 60, 83 S.Ct. at 110, the Court of Appeals for this Circuit applied the logical relation test to hold the Government's claim for additional charter hire to be a compulsory counterclaim to the charterer's demand for interest. The Court then dismissed the Government's suit since "it is well settled that the penalty for failure to comply with the rule is that an independent action will not subsequently lie upon a claim which should have been asserted as a counterclaim." 255 F.2d at 802. The case was decided under Court of Claims Rule 17(a) which was modeled after F.R.Civ.P. 13(a).

courts can use the procedural devices of transfer, stay and consolidation to avoid multiple litigation and to effectuate the Rule. See *Polaroid Corp. v. Casselman*, 213 F.Supp. 379 (S.D.N.Y.1962) (transfer); *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197 (2d Cir. 1970) (stay); *Speed Products Co. v. Timmerman Products, Inc.*, 222 F.2d 61 (2d Cir. 1955) (consolidation); see generally, 6 C. Wright and A. Miller, *Federal Practicé and Procedure* § 1418 (1971 ed.).

■ Applying these principles to the instant case, it is clear that Cyprus's claims against the Whitman interests in this Court are compulsory counterclaims which should have been asserted in the Pittsburgh action. The logical relationship between the claims in both actions is evident. In the Pittsburgh action, the Whitman interests claimed that the Cyprus interests conspired to deprive the preferred stockholders of their guaranteed representation on the Cyprus board of directors, and that in furtherance of this conspiracy they issued false and misleading proxy solicitations in connection with the 1982 annual meeting. In this Court, the Cyprus interests claim that the Whitman interests conspired to deal in Cyprus preferred stock and illegally solicit proxies in connection with this same annual meeting. The transaction or occurrence which underlies both claims is the series of events surrounding the election of a board of directors at the 1982 Cyprus annual meeting and the related actions by two competing interests in this election. While the claims may allege different violations of the securities laws or concern different proxy solicitations, "the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem, supra*, 571 F.2d at 123 (2d Cir. 1978).

This conclusion is supported by the recent decision of the Court of Appeals for this Circuit in *Crouse-Hinds Company v. InterNorth, Inc.*, 634 F.2d 690 (2d Cir. 1980). The suit involved an attempted takeover of Crouse-Hinds by InterNorth and a proposed merger between Crouse-Hinds and the Belden Corporation. The initial claim, filed by Crouse-Hinds, alleged that InterNorth had violated New York business corporation law and federal securities law and sought an injunction preventing InterNorth from acquiring Crouse-Hinds stock. InterNorth counterclaimed arguing that the proposed merger of Crouse-Hinds with Belden lacked a legitimate business purpose and was unfair to Crouse-Hinds stockholders. Although the claim involved an offer by InterNorth to purchase Crouse-Hinds stock while the counterclaim involved an exchange of stock between Crouse-Hinds and Belden, arguably discrete transactions, the Court held that the counterclaim was compulsory: "The logical relationship between the Exchange Offer and the Tender Offer is plain. Both offers seek to affect the consummation of the proposed merger between Crouse-Hinds and Belden: one seeks to further it, and the other seeks to thwart it." 634 F.2d at 700. The logic is equally applicable here. The actions alleged in the claims in this Court and in the Pittsburgh action both seek to affect the election of the board of directors at the 1982 Cyprus annual meeting. Like the distinct but related offers in *Crouse-Hinds*, these actions gave rise to separate claims which fall within the "same transaction or occurrence" test of the compulsory counterclaim rule.

Similar logic led to a similar result in *Vernon J. Rockler & Co., Inc. v. Minneapolis Shareholders Co.*, 69 F.R.D. 1 (D.Minn.1975). There, an action was brought as a shareholder derivative suit and class action under the securities laws concerning a purported sale of corporate assets. The claim included allegations of false and misleading proxy statements. The counterclaim alleged an unlawful conspiracy to interfere with the contractual rights of other shareholders in the corporation. The Court held this counterclaim compulsory stating, "It is reasonable to conclude from the claim stated in plaintiffs' complaint that the 'transaction' here encompasses the series of events involving the purported sale of the Grain Belt Brewery assets. There can be no doubt that the counterclaim herein has a sufficient 'logical relationship' to plaintiffs'

claims to constitute what has been recognized as a compulsory counterclaim." 69 F.R.D. at 4. As authority for this holding the Court cites *Koufakis v. Carvel,* 425 F.2d 892 (2d Cir. 1970), a case in which the Court of Appeals for this Circuit applied the "logical relation" test to find a compulsory counterclaim.

■ Thus, both general principles and their application in specific cases demonstrate that F.R.Civ.P. 13(a) requires that Cyprus's complaint in this Court be dismissed. Permitting this action to proceed "would result in fragmentation of litigation and multiplicity of suits contrary to one of the major purposes of Rule 13(a)." *United States v. Heyward-Robinson Co., supra,* 430 F.2d at 1082 (2d Cir. 1970), *cert. denied,* 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971). Fairness dictates this same result. This action was brought by the Cyprus interests nineteen (19) days after the Whitman interests filed suit in Pittsburgh, squarely placing this dispute before the Pennsylvania court. Neither justice nor Rule 13(a) requires the Whitman interests to fight their war on two fronts.

It is entirely unrealistic for Cyprus to contend that the Pittsburgh action was confined to the single, discrete issue of the Cyprus interests' proxy statement. That is comparable to saying that the first battle of Bull Run had nothing to do with the second battle of Bull Run, and that neither was a part of the Civil War. All the claims now sought to be asserted in this Court against the Whitman interests were available to the Cyprus interests in the Pittsburgh action; those claims allege improprieties on Whitman's part occurring in December, 1981, and hence were assertable by Cyprus at the time it answered the Pittsburgh action on January 28, 1982. Thus the first requirement of Rule 13(a) is satisfied. Indeed, as appears in the discussion under Point II *supra,* Cyprus advanced certain of those claims in its trial brief and proposed findings before Judge Rosenberg. Counsel for Cyprus argue before me that those claims were not pressed before Judge Rosenberg, but that is hardly the point; under Rule 13(a) Cyprus was obligated to assert its counterclaims, and must accept the consequence of its failure to do so.

That consequence requires dismissal of this action. Cyprus having failed to assert by way of compulsory counterclaim in the Pittsburgh action its claims of statutory violations and proxy wrongdoings on the part of the Whitman interests, it cannot enjoin Whitman's proxy activities here. While the Cyprus complaint also claims damages, no basis of entitlement is suggested other than the disputes which gave rise to counterclaims which are clearly compulsory in nature. Therefore the entire case here falls. I recognize this grants the Whitman interests a greater measure of relief than that sought by their present motion. It is nonetheless appropriate.

The parties have debated at length whether the Pittsburgh action has been terminated, or remains "open." I need not resolve that question. On the present record it is clear that Cyprus's claims here must be dismissed as compulsory counterclaims which should have been asserted in the Western District of Pennsylvania. Whether the Pittsburgh action remains sufficiently "open" to permit their assertion now, upon proper application, I respectfully leave to Judge Rosenberg.

The Clerk of the Court is directed to dismiss this action with prejudice, subject, however, to such application as plaintiff may be permitted to make to assert these claims in the Western District of Pennsylvania. No costs or fees are awarded.

It is So Ordered.