Chesson v. Rives; Rives v. Chesson, 2017 NCBC 111.

STATE OF NORTH CAROLINA

COUNTY OF DAVIDSON

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

W. CHRISTOPHER CHESSON;
JAMES G. LOVELL; and DAVID D.
FRASER,

        Plaintiffs,

        v.

W. LEON RIVES; LEON L. RIVES, II;
and RIVES & ASSOCIATES, LLP,

        Defendants.

**12-CVS-3382**

W. LEON RIVES; LEON LITTLE
RIVES, II; and R&A HOLDINGS,

        Plaintiffs,

        v.

W. CHRISTOPHER CHESSON,

        Defendant.

**15-CVS-3430**

**ORDER & OPINION ON THE MOTION TO DISMISS AND THE MOTION TO CONSOLIDATE**

1.    THIS MATTER is before the Court on two motions: (1) W. Leon Rives, Leon Little Rives, II, and R&A Holdings' Motion to Dismiss pursuant to Rule 13(a) of the North Carolina Rules of Civil Procedure ("Rule(s)") filed in *Rives v. Chesson*, 15-CVS-3430, (N.C. Super. Ct. Dec. 29, 2015) ("*Chesson II*") ("Motion to Dismiss"), which contends that the claim in this action is barred because it was a compulsory counterclaim in the earlier filed action, *Chesson v. Rives*, No. 12-CVS-3382 (N.C.

Super. Ct. Oct. 25, 2012) ("*Chesson I*"); and (2) W. Leon Rives, Leon Little Rives, II, Rives & Associates, LLP, and R&A Holdings' Motion to Consolidate *Chesson I* and *Chesson II* ("Motion to Consolidate"). For the reasons stated below, the Court DENIES the Motion to Dismiss and GRANTS the Motion to Consolidate.

*Sharpless & Stavola, P.A., by Frederick K. Sharpless, for Plaintiffs.*

*Carruthers & Roth, P.A., by Jack B. Bayliss, Jr. and Mark York, for Defendant.*

Gale, Chief Judge.

## I.    THE PARTIES

2.     W. Leon Rives ("William"), Leon Little Rives, II ("Leon"), and W. Christopher Chesson ("Chesson") formerly practiced accounting as partners of Rives & Associates, LLP ("RA").

3.     William, Leon, and Chesson also owned R&A Holdings ("Holdings"). (*Chesson II* Compl. ¶¶ 3, 5, ECF No. 1.) William and Leon contend that Holdings is a North Carolina partnership with William and Leon each owning 40% and Chesson owning 20%. (*Chesson II* Compl. ¶¶ 3, 5.)

4.     It is unclear whether Chesson admits that Holdings was a separate partnership. He contends that Holdings was created for the sole purpose of an accounting of RA's intangible assets and liabilities, (*see* Def.'s Br. Supp. Mot. Dismiss 1–2, ECF No. 23), but admits that he withdrew from Holdings on October 5, 2012. (*Chesson II* Compl. ¶ 6; *Chesson II* Answer ¶ 6, ECF No. 13.) William and Leon contend that Chesson's withdrawal from Holdings effectively caused its dissolution. (*Chesson II* Compl. ¶ 11.)

5.     William, Leon, Chesson, and RA are each parties to *Chesson I*, but Holdings is not.

## II.     STANDARD OF REVIEW

6.     Rule 13(a) requires that "[a] pleading . . . state as a counterclaim any claim which at the time of serving the pleading *the pleader* has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," so long as the claim "does not require for its adjudication the presence of third parties [over] whom the court cannot acquire jurisdiction."  N.C. Gen. Stat. § 1A-1, Rule 13(a) (2015) (emphasis added).  "The purpose of Rule 13(a) . . . is to enable one court to resolve 'all related claims in one action . . . .'"  *Gardner v. Gardner*, 294 N.C. 172, 176, 240 S.E.2d 399, 403 (1978) (quoting Wright & Miller, Federal Practice and Procedure, § 1409, at 37 (1971)), *superseded by statute* N.C. Gen. Stat. § 50-19 (2015), *on other grounds*.

7.     "[A] motion to dismiss on the ground of a prior action pending" is treated as a motion pursuant to Rule 13(a), and when determining whether a claim was a compulsory counterclaim in a prior action, the court properly considers the record in the prior action.  *Richardson v. Mancil*, 2010 N.C. App. LEXIS 2323, at *18–19 (N.C. App. Dec. 21, 2010) (quoting *Atkins v. Nash*, 61 N.C. App. 488, 489, 300 S.E.2d 880, 881 (1983)) (explaining that "[i]t would be impossible for a trial court to determine if an asserted claim should be dismissed under Rule 13(a) because it constituted a compulsory counterclaim in a prior action if the trial court could not consider the court record in the previous case").

## III. FACTUAL AND PROCEDURAL BACKGROUND

8. The Court briefly summarizes the facts and procedural history of *Chesson I*. A more detailed background is included in the Court's earlier opinion, *Chesson v. Rives*, No. 12-CVS-3382, 2016 NCBC LEXIS 92, at *2–12 (N.C. Super. Ct. Nov. 30, 2016).

9. RA was initially formed by William and Leon in 2004 as a North Carolina limited-liability partnership, and Chesson later joined the partnership. *Chesson*, 2016 NCBC LEXIS 92, at *2. William and Leon contend that in September 2007, William, Leon, and Chesson formed Holdings as a North Carolina partnership (*Chesson II* Compl. ¶¶ 3, 5) and also executed a partnership agreement for RA. *Chesson*, 2016 NCBC LEXIS 92, at *2.

10. There is no written partnership agreement for Holdings. (*Chesson II* Compl. ¶ 5.)

11. The RA Partnership Agreement identifies the "Pool" as owning 100% of RA's Charlotte Operations and William, Leon, and Chesson as owning 100% of the Pool. (*See* Leon Rives Aff., Ex. D, § 3.01, ECF No. 162.7 ("RA Partnership Agreement").) Chesson contends that Holdings is essentially the same as the Pool. (Def.'s Br. Supp. Mot. Dismiss 2; *see also* RA Partnership Agreement § 3.01.) William, Leon, and Chesson's percentage ownership of the Pool is the same as their ownership of Holdings. (*See* RA Partnership Agreement § 3.01; *Chesson II* Compl. ¶ 5.)

12. Chesson resigned from both Holdings and RA on October 5, 2012. *Chesson*, 2016 NCBC LEXIS 92, at \*10; (*Chesson II* Compl. ¶ 6; *Chesson II* Answer ¶ 6.)

13. On October 25, 2012, Chesson, along with two withdrawing non-equity RA partners, brought *Chesson I*, asserting claims against William, Leon, and RA based on alleged mismanagement. *Chesson I* includes a request for an accounting pursuant to N.C. Gen. Stat. § 57C-3-04. (*See Chesson I* Pl.'s First Am. Compl., ¶ 139, ECF No. 13.) As a part of his accounting claim, Chesson seeks "information regarding the status of the business and financial condition of the Defendant RA *and all related or affiliated entities.*" (*Chesson I* Pl.'s First Am. Compl., ¶ 139 (emphasis added).)

14. On December 18, 2013, William, Leon, and RA filed counterclaims against Chesson in *Chesson I*. (*Chesson I* Answer, Mot. to Strike and Countercls. of Defs., ECF No. 27 ("*Chesson I* Countercls.").) They did not assert counterclaims on behalf of Holdings or seek to join Holdings as a third party.

15. William and RA did bring a counterclaim against Chesson for money had and received based on payments made to Chesson's prior employer in connection with Chesson joining RA. (*Chesson I* Countercls. at 10.) Chesson contends that these payments were not a loan but a cost incurred by RA to allow Chesson to join the partnership. *See Chesson*, 2016 NCBC LEXIS 92, at \*2–3, 43. On November 30, 2016, the Court determined that neither party was entitled to summary judgment on the claim related to this payment. *Id.* at \*44.

16.     Like Chesson, William and Leon also seek an accounting of RA in *Chesson I*. (*Chesson I* Countercls. at 15.)

17.     On December 29, 2015, William, Leon, and Holdings brought a separate action—*Chesson II*—seeking an accounting of Holdings together with an order requiring Chesson to contribute his *pro rata* share of Holdings' losses from its inception through its dissolution on October 5, 2012. (*Chesson II* Compl. ¶ 13.)

18.     On March 11, 2016, Chesson filed his Answer in *Chesson II* asserting, among other defenses, that the claim in this new action was a compulsory counterclaim that should have been asserted in *Chesson I*. (*Chesson II* Answer ¶ 16.)

19.     On April 20, 2016, William, Leon, RA, and Holdings moved to consolidate *Chesson I* and *Chesson II*.

20.     On May 2, 2016, Chesson moved to dismiss *Chesson II* pursuant to Rule 13(a).

21.     The Court deferred consideration of the Motion to Dismiss until its rulings on cross-motions for summary judgment in *Chesson I* were issued on November 13, 2016. *See generally Chesson*, 2016 NCBC LEXIS 92.

22.     On March 9, 2017, the Court heard arguments on the Motion to Dismiss and the Motion to Consolidate.

23.     The motions are now ripe for determination.

### IV.     ANALYSIS

24.     William and Leon do not contest that the *Chesson II* claim could have been brought as a permissive counterclaim in *Chesson I* because it relates to the

subject matter of the *Chesson I* claims and Holdings is subject to the Court's jurisdiction. N.C. Gen. Stat. § 1A-1, Rule 13(b) (2015) ("A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.").

25. Chesson contends, however, that William and Leon were required to assert the *Chesson II* claim as a compulsory, rather than permissive, counterclaim in *Chesson I*, even though Holdings was not a party to, and therefore not a pleader in, *Chesson I*.

26. When a claim belongs to a pleader in a pending action, to determine whether a claim is a compulsory counterclaim the court considers "(1) whether the issues of fact and law raised by the claim and counterclaim are largely the same; (2) whether substantially the same evidence bears on both claims; and (3) whether there is a logical relationship between the two claims." *Curlings v. Macemore*, 57 N.C. App. 200, 202, 290 S.E.2d 725, 726 (1982); *see also Hendrix v. Advanced Metal Corp.*, 195 N.C. App. 436, 439, 672 S.E.2d 745, 747 (2009).

27. The language of Rule 13(a) specifies that to be a compulsory counterclaim, a claim must belong to a pleader in the action. *See* N.C. Gen. Stat. § 1A-1, Rule 13(a) (2015). Chesson contends that the rule's requirement was satisfied because Holdings was not a separate legal entity, and even if Holdings was a separate legal entity, William and Leon, as partners of Holdings, could and should have brought any claims related to Holdings in *Chesson I* and joined Holdings, if necessary.

28.     William and Leon respond that Holdings is a separate partnership, that the *Chesson II* claim is not a claim of RA or the individual partners, but a claim that must be asserted by Holdings in its own right, and that joining Holdings as a party to *Chesson I* was permissive, not mandatory. (*See* Resp. R&A Holdings Def.'s Mot. Dismiss 3, ECF No. 28.)

29.     The Court need not resolve the disputes of whether Holdings is a separate partnership and whether the *Chesson II* claim belongs to, and must be brought by, Holdings for two reasons. First, if Chesson correctly asserts that Holdings is related to or affiliated with RA, then his own claim for an accounting of RA already includes an accounting of Holdings. (*See Chesson I* Pl.'s First Am. Compl., ¶ 139 (requesting an accounting that includes "information regarding the status of the business and financial condition of the Defendant RA *and all related or affiliated entities*") (emphasis added).)

30.     Second, if Chesson is correct that the *Chesson II* claim was a compulsory counterclaim that should have been asserted in *Chesson I*, the Court is empowered, and would exercise its discretion, to allow William and Leon to amend their counterclaims in the pending *Chesson I*. *See Hendrix*, 195 N.C. App. at 441, 672 S.E.2d at 748 (holding that the claim was a compulsory counterclaim and remanding "the case for the trial court to grant leave to file plaintiffs' claims as counterclaims in [the initial] action"); *see also Galligan v. Smith*, 14 N.C. App. 220, 226, 188 S.E.2d 31, 35 (1972) ("The trial court has broad discretion in permitting or denying amendments to pleadings.").

31.     "From a practical viewpoint[,] it [makes] no difference whether the claim should be stated by an amendment in the first action or by complaint in a second action . . . ." *Speed Prods. Co. v. Tinnerman Prods.*, 222 F.2d 61, 68 (2d Cir. 1955). The Court concludes that the appropriate practical solution is to simply consolidate the cases. *See id.* (affirming the trial court's decision to consolidate two cases after determining that the claim brought in the second action was a compulsory counterclaim that the court would allow to be included in the initial action by amendment under federal Rule 15(a)); *see also Kanoy v. Hinshaw*, 273 N.C. 418, 423, 160 S.E.2d 296, 300 (1968) ("[T]rial court[s] possess[ ] the power to order consolidation of actions for trial when the actions involve the same parties and the same subject matter, if no prejudice or harmful complications will result therefrom.").

32.     The Court is not aware of any potential prejudice created by this consolidation. At the hearing, the parties suggested that additional discovery may be needed if the Court allowed consolidation of the actions. If appropriate, the Court will consider allowing limited additional discovery related to the *Chesson II* claim. The Court is requesting a proposal from the parties before entering a new scheduling order regarding any additional discovery.

## V.     CONCLUSION

33.     Based on the foregoing, the Court orders as follows:

    a.     The Motion to Dismiss *Chesson II* is DENIED;

    b.     The Motion to Consolidate *Chesson I* and *Chesson II* is GRANTED;

c.   *Chesson I* and *Chesson II* shall be consolidated for all future proceedings; prior pleadings shall be deemed filed in both actions; and all future pleadings shall include the caption for both cases; and

d.   The parties shall confer and, within thirty days of this Order & Opinion, submit a proposed schedule for further procedures consistent with this Order & Opinion.

IT IS SO ORDERED, this the 13th day of December, 2017.

/s/ James L. Gale
James L. Gale
Chief Business Court Judge